**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JAMES EDWARD THOMAS,

     Petitioner,

v.                                Case No. 8:21-cv-1256-CEH-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.
_____/

**ORDER**

     James Edward Thomas, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, the response in opposition (Doc. 9), and Thomas's reply (Doc. 15), the petition will be denied.

**Procedural History**

     A state court jury convicted Thomas of burglary of a dwelling. (Doc. 10-2, Ex. 1, p. 25.) The state trial court sentenced him to 15 years in prison as a prison releasee reoffender. (*Id.*, p. 49.) The state appellate court *per curiam* affirmed the conviction and sentence. (Doc. 10-2, Ex. 4.) Thomas moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 10-2, Ex. 6, pp. 3-51.) The state trial court denied relief, and the state appellate court *per curiam* affirmed the denial. (*Id.*, pp. 304-387; Doc. 10-2, Ex. 9.)

1

**<u>Facts</u>**[1]

On the evening of February 15, 2017, James Peterson answered the front door of his home in St. Petersburg, Florida. At the door was Detective Brett McKean, holding a drill that belonged to Peterson. That day, Peterson had used several tools, including two similar-looking drills from the same set, as he worked in his backyard on an addition to his house. When it started raining, Peterson went inside the house and brought one drill with him. He closed the door but did not lock it. After he left the drill on a box inside the rear door of the addition, Peterson moved to the front of the house. Peterson did not hear a door opening or a person coming into his house. Peterson said although his dog had a strong prey drive, she did not react as if someone came into the house. Peterson was surprised when Detective McKean arrived at his door with the drill.

Detective McKean became involved while responding to a call about a suspicious person in Peterson's neighborhood. Detective McKean concealed himself in the alley behind Peterson's backyard and saw Thomas enter Peterson's property from the alley. Detective McKean heard a door closing. He believed the sound was coming from the Peterson property. A short time later, officers located Thomas near Peterson's home. Thomas's backpack contained a drill. Thomas told Detective McKean that he bought the drill, and then said that he found the drill, before stating, "Ok. You got me. It isn't mine." ( Doc. 10-2, Ex. 1a, p. 330.) Thomas cooperated with

---

[1] This factual summary is based on the trial transcript and appellate briefs.

police and identified the address where he obtained the drill. During an interview at the police station, Thomas told Detective McKean that he took the drill out of the unlocked rear door of a residence off the alley.

## Standards of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme]

3

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance of Counsel**

Thomas brings claims alleging ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Thomas must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Thomas must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The

question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Discussion

### Ground One

Thomas argues that counsel was ineffective for not moving to suppress his incriminating statements obtained in violation of *Miranda*[2] and for not discussing suppression with him. Thomas refers to two of his statements introduced through Detective McKean's trial testimony. First, Detective McKean testified that when he asked Thomas about the drill near the scene, Thomas answered, "Okay. You got me. It isn't mine." (Doc. 10-2, Ex. 1a, p. 330.) Second, Detective McKean testified that during questioning at the police station, Thomas said that he took the drill from inside the unlocked door of a residence. (*Id.*, pp. 340-41.)

Thomas asserts that he did not waive his *Miranda* rights before making the statements. Thomas alleges that even though he told police he did not want to talk, Detective McKean pressured him into making statements. Under these circumstances, Thomas argues, a motion to suppress his incriminating statements would have been granted and the outcome of trial would have been different.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The state court denied Thomas's ineffective assistance claim. The state court found that Thomas did not establish a reasonable probability that the outcome of trial would have been different absent these statements due to the State's "ample evidence" of guilt aside from the statements. (Doc. 10-2, Ex. 6, p. 307.) At issue was whether Thomas entered Peterson's home when he took the drill that police recovered, or whether he took the drill from another area on the property. To convict Thomas of the charged offense of burglary of a dwelling, the State had to prove that he entered the home. *See* § 810.02(1)(b), Fla. Stat. (defining the offense of burglary and stating that the offender must "enter[ ]" the dwelling, structure, or conveyance).

In determining that counsel was not ineffective, the state court summarized other evidence tending to show that Thomas took the drill from inside the residence. (*Id.*, pp. 307-08.) The state court cited evidence that Detective McKean saw Thomas walk onto Peterson's property; that a door was open and closed; that Peterson had taken the drill inside the house with him and had left the back door unlocked; and that Thomas was found nearby with a drill belonging to Peterson in his backpack. (*Id.*) The state court concluded:

> That evidence, independent of the Defendant's statements, . . . showed that defendant entered Mr. Peterson's house and stole the drill, even without his statements corroborating those actions. Given that other evidence, there is no reasonable probability that the result of the proceeding would have been different had defendant's statements been suppressed. This claim is denied.

(*Id.*)

The record supports the state court's conclusion. As detailed in the state court's order, the State presented evidence other than Thomas's statements from which the jury could conclude that Thomas took the drill from inside Peterson's house. The state court reasonably found that Thomas failed to show a reasonable probability of a different outcome at trial if the identified statements were excluded following a successful motion to suppress. Since Thomas does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground One.

**Grounds Two and Three**

In Ground Two, Thomas argues that trial counsel was ineffective for failing to discuss with him and put forth a viable trial strategy. Counsel argued that the State's evidence was insufficient to prove the charged offense of burglary of a dwelling and merely supported a conviction for the lesser offense of trespass. Thomas states that he did not give counsel permission to concede guilt, and that counsel presented no defense to rebut the State's case.

In Ground Three, Thomas asserts that he wanted to testify, but that trial counsel's misadvice caused him not to do so. Thomas states that he would have testified, contrary to Detective McKean's testimony, that he never admitted to taking the drill from inside the residence. Thomas contends that his testimony would have supported the argument that the State's evidence only proved a lesser offense.

The state court considered these claims together and found that they were based on contradictory factual allegations regarding Thomas's willingness to concede guilt.

8

(Doc. 10-2, Ex. 6, p. 56.) The state court reasoned that Thomas was not entitled to relief on either claim because granting one claim "would require the Court to reject as false" Thomas's sworn allegations concerning the other claim, "which the Court is not at liberty to do." (*Id.*)

Thomas asserts that the state trial court incorrectly found that his claims were inconsistent. He explains that he argued to the state court that (1) counsel should not have conceded his guilt in the first instance, but (2) after counsel nevertheless chose this course and conceded Thomas's guilt to trespass, counsel's misadvice kept him from providing testimony supporting that defense. Thomas asserts that in erroneously denying these claims as inconsistent, the state court failed to review the merits.

Thomas does not show entitlement to relief. In finding that neither claim alleged facts sufficient to warrant relief, the state court addressed the merits.[3] Thomas does not show that the state court's ruling was unreasonable under the highly deferential AEDPA standard. Moreover, even if each claim is analyzed independently, Thomas does not establish entitlement to relief.

---

[3] *See, e.g.*, *Borden v. Allen*, 646 F.3d 785, 808-16 (11th Cir. 2011) (examining a state postconviction court's rejection of a claim for failure to plead the claim with sufficient specificity and stating that the state court's "consideration of the sufficiency of the pleadings concerning a federal constitutional claim [in a postconviction motion] necessarily entails a determination on the merits of the underlying claim"); *Gaedtke v. Sec'y, Dep't of Corr.*, 369 F. App'x 12, 13-14, 16 n.2 (11th Cir. 2010) (stating that a state court's denial of an ineffective assistance claim as facially insufficient when the petitioner did not allege he was prejudiced and therefore "failed the prejudice prong of *Strickland*" was a denial on the merits entitled to deference under § 2254(d)(1)).

In Ground Two, Thomas faults counsel for arguing that the jury should convict him of the lesser offense of trespass. Thomas cites *McCoy v. Louisiana*, 584 U.S. 414 (2018), where the Supreme Court found structural error when counsel conceded guilt during the guilt phase of a capital trial over the defendant's express objections. *McCoy* concluded that under the Sixth Amendment, whether to assert innocence is the defendant's choice. *Id*. at 422. Thus, "[w]hen a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *Id*. at 423 (quoting U.S. Const. amend. VI). Because the defendant's autonomy, rather than counsel's ineffectiveness, "is in issue," the *Strickland* analysis does not apply to this type of claim. *Id*. at 426. Rather, a Sixth Amendment violation occurs when "counsel usurp[s] control of an issue within [the criminal defendant's] sole prerogative." *Id*. at 426-27.

*McCoy* does not entitle Thomas to relief. In that case, McCoy opposed conceding guilt "at every opportunity, before and during trial," and "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *Id*. at 417, 424. But here, there is no indication that Thomas made any "express statements of [his] will to maintain innocence" that would have bound counsel. *Id*. at 424.

In his opening statement, counsel said that the jury would hear evidence that Thomas went onto Peterson's property and took something that did not belong to him,

but that the jury would not hear evidence that Thomas was seen going inside the residence. (Doc. 10-2, Ex. 1a, p. 157.) Counsel stated that the jury must render a verdict based on what the evidence showed, not on inferences or possibilities, and that the jury should "[f]ind [Thomas] responsible for what he's responsible for, but don't convict him of something that hasn't been proven by evidence beyond a reasonable doubt." (*Id.*, pp. 157-58.)

Thus, it was clear from the beginning of the trial that the defense strategy was to concede guilt on a lesser offense while asserting that the State failed to meet its burden of proof on the charged offense. But Thomas did not oppose this strategy. Absent an express objection in the record, Thomas does not show that he was deprived of his Sixth Amendment right to decide the objective of his defense.

Nor does Thomas show that counsel was ineffective for pursuing this defense. The State presented uncontroverted evidence that Thomas was in possession of a drill that belonged to Peterson and that Thomas was seen going onto Peterson's property. Thomas even led police to Peterson's address. Under these circumstances, Thomas does not show that counsel unreasonably chose not to challenge this evidence and to argue instead that the evidence only proved the commission of a lesser offense.

Counsel did so by challenging the reliability of evidence involving Thomas's entry into the house. Counsel pointed out that Detective McKean did not see Thomas enter the house, and questioned whether Detective McKean could have been sure that the sound of a door came from Peterson's property and not from one of the other properties along the alley. (Doc. 10-2, Ex. 1a, pp. 435-36, 442-44.) Counsel also noted

that Peterson did not hear anyone come into the house and that his dog, which Peterson described as having a very strong prey drive, did not react as if someone had come in. (*Id.*, pp. 436-38.) Counsel questioned whether Peterson could be sure that the drill recovered by police was the same drill he put inside the house, given that a similar-looking drill and other tools were left in the yard and could have been taken. (*Id.*, pp. 436-38, 444-46.)

Thomas does not show that taking this approach rendered counsel ineffective. While Thomas argues that counsel did not rebut the State's case, Thomas does not assert what other argument or defense he believes counsel should have presented. Thomas does not show entitlement to relief on his claim that counsel was ineffective for conceding his guilt to a lesser offense.

In Ground Three, Thomas contends that counsel misadvised him about testifying. Thomas states that he was wrongfully informed by counsel and the trial court that he could be cross-examined about his prior convictions. Before Thomas decided whether to testify, the trial court and parties had a discussion. The State indicated that Thomas had eleven prior felony convictions, one of which was for a crime of dishonesty. (*Id.*, pp. 384-85.) The trial court said, "Okay. So you'd be subject to cross-examination on that fact as well, Mr. Thomas . . . ." (*Id.*, p. 385.) After the discussion, Thomas conferred with his attorney. Thomas contends that "[b]ased upon the combination of trial counsel's and the trial court's information [he] elected not to testify." (Doc. 1, p. 44.)

Thomas has not shown ineffective assistance of counsel. When the trial court stated that Thomas would be subject to cross-examination, the trial court and parties were discussing the number of Thomas's prior convictions, not the details or charges involved. *See Ross v. State*, 913 So.2d 1184, 1186-87 (Fla. 4th DCA 2005) (explaining that a witness can be impeached with the fact and number of his prior convictions, but that a prosecutor can inquire further into the prior convictions if the witness tries to mislead the jury about them).

Moreover, even assuming deficient performance, Thomas has not shown *Strickland* prejudice. Thomas states that he would have testified that he never admitted to taking a drill from inside Peterson's house. But even if Thomas gave such testimony at trial, as addressed in Ground One, evidence aside from this incriminating statement was sufficient for the jury to convict Thomas of burglary of a dwelling. Therefore, Thomas has not shown a reasonable probability of a different outcome at trial had he testified and denied admitting that he took the drill from inside a residence. Thomas is not entitled to relief on Ground Two or Ground Three.

**Ground Four**

Thomas argues that counsel was ineffective for not requesting a jury instruction or an option on the verdict form for theft. Thomas asserts that the jury would have found him guilty of trespass and theft if presented with that option.

The state court found that Thomas failed to prove prejudice from counsel's conduct. (Doc. 10-2, Ex. 6, p. 57.) The state court concluded that "the jury's finding of guilt beyond a reasonable doubt on the offense of burglary precludes a finding that

the jury would have found defendant guilty of the offenses of trespass and theft because it would have required a jury pardon." (*Id*.) The state court continued that it could not "entertain the notion that the jury would have ignored its own findings of fact and the trial court's instructions on the law to find defendant guilty of a lesser-included offense having found him guilty of the greater." (*Id*.)

The state court's decision was reasonable. By finding Thomas guilty of burglary of a dwelling, the jury determined that the State had proven every element of that offense beyond a reasonable doubt. The Florida Supreme Court addressed a similar claim in *Sanders v. State*, 946 So.2d 953, 956 (Fla. 2006). That court concluded that "a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon" through a conviction for a lesser offense because a jury pardon "by definition assumes that the jury would have disregarded the law, the trial court's instructions, and the evidence presented." *Id*. at 956.

A panel of the Eleventh Circuit addressed *Sanders* in *Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888 (11th Cir. 2012). The Eleventh Circuit stated, "[t]he jury in Santiago's trial concluded that the evidence against him supported his conviction for the greater offenses on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict Santiago of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses." *Id*. at 889. Thus, the *Santiago* court "[could not] say that the Florida appellate court unreasonably applied *Strickland*" in finding that counsel was not ineffective for failing to request an instruction on a

lesser offense. *Id.*; *see also Harris v. Crosby*, 151 F. App'x 736, 738 (11th Cir. 2005) ("Harris's assertions that he would have been convicted of the lesser included offense, as opposed to the greater offense, are pure speculation . . . that the jury, if instructed on the lesser included offense, would have convicted on it instead of the higher offense. That speculation is insufficient to undermine our confidence in the outcome of his trial.").

The jury was instructed on the charged offense of burglary, as well as the lesser offenses of attempted burglary, burglary to a structure, trespass of a structure, and trespass other than a structure. (Doc. 10-2, Ex. 1a, pp. 475-83.) The trial court instructed the jury that if it "return[ed] a verdict of guilty, it should be for the highest offense which has been proved beyond a reasonable doubt." (*Id.*, p. 489.) "Jurors are presumed to follow the law as they are instructed." *Hallford v. Culliver*, 459 F.3d 1193, 1204 (11th Cir. 2006).

Thomas fails to show a reasonable probability that the outcome of his trial would have been different had the jury been instructed on theft. Thomas has not shown that the state court unreasonably applied *Strickland*'s prejudice prong or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Four.

**Ground Five**

Thomas argues that counsel misadvised him and failed to adequately communicate and negotiate during the plea-bargaining process. Thomas asserts that counsel advised him that the victim was confused about the drill's location and that counsel therefore believed Thomas would be acquitted or convicted of a lesser offense.

He contends that as a result, he rejected the State's ten-year plea offer on the day of trial.

In denying Thomas's ineffective assistance claim, the state court found that there was no evidence that the State made such an offer. The state court identified Thomas's allegation that "[o]n the day of trial . . . the State made a 10-year[] plea offer" in response to a six-year offer Thomas made the Friday before trial. (Doc. 10-2, Ex. 6, p. 308.) But the state court noted that immediately before jury selection began, counsel stated on the record that "the most recent offer" was Thomas's offer of "six years with a waiver of [a prison releasee reoffender designation] that was rejected by the State." (*Id*.) Accordingly, the state court concluded, the record "conclusively refute[d]" Thomas's claim. (*Id*.) The state court found that no other part of the record reflected that the State "ever made an offer" to Thomas. (*Id.*, pp. 308-09.)

The state court's decision was reasonable. Thomas contends that the State made the ten-year offer in response to his six-year offer. But the record confirms that counsel told the state trial court just before trial that Thomas's six-year offer, made the previous Friday, was the last offer made in the case. (Doc. 10-2, Ex. 1a, p. 131.) Because the state court's decision did not involve an unreasonable application of *Strickland* and was not based on an unreasonable factual determination, Thomas is not entitled to relief on Ground Five.

It is therefore **ORDERED** that Thomas's petition for writ of habeas corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Thomas and to **CLOSE** this case.

It is further **ORDERED** that Thomas is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). The district court or the circuit court of appeals must issue a certificate of appealability. *Id*. To obtain a certificate of appealability, Thomas must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Thomas has not made the requisite showing. Since Thomas is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on July 23, 2024.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
James Edward Thomas, *pro se*
Counsel of record